# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**DEBORAH J. GRAY,**

                    Plaintiff,

          v.

**NANCY A. BERRYHILL,**
Commissioner of Social Security,

                    Defendant.

Case No. 6:17-cv-43-SI

**OPINION AND ORDER**

Drew L. Johnson and Sherwood J. Reese, DREW L. JOHNSON PC, 1700 Valley River Drive, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, DISTRICT OF OREGON, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Martha A. Boden, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

          Deborah Gray seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying her applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Because the

Commissioner's decision was not based on the proper legal standards and the findings were not

supported by substantial evidence, the decision is REVERSED and REMANDED for immediate

payment of benefits.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.    Plaintiff's Applications

Ms. Gray filed applications for DIB and SSI in March 2010, alleging disability as of June 25, 2008. AR 93. The claims were denied initially and upon reconsideration, and Ms. Gray

did not timely file a request for hearing. AR 11. In May 2011, Ms. Gray applied for DIB and SSI, again alleging an onset date of June 25, 2008. AR 118, 200-01. The applications were denied initially and on reconsideration, and this time Ms. Gray timely requested hearing before an Administrative Law Judge ("ALJ"), which was held on June 13, 2013. AR 30-91. After the hearing, ALJ Elizabeth Watson found Ms. Gray not disabled in a decision dated June 27, 2013. AR 11-21. After the Appeals Council rejected Ms. Gray's request for review, she filed an action in this court, *Gray v. Comm'r Soc. Sec. Admin.*, Case No. 6:14-cv-01552-BR. In that action, the parties stipulated to remand the case for further proceedings to reconsider the opinions of Sharon Beickel, Ph.D., and state agency physician Joshua Boyd, which ALJ Watson did not consider in her decision. AR 626-27, 639-40. A second hearing was convened on remand on May 25, 2016, this time before ALJ Ted W. Neiswanger. AR 562-600. In a decision dated September 15, 2016, an ALJ again found that Ms. Gray was not disabled. AR 539-551. The decision became the final decision of the Commissioner when the Appeals Council declined to assume jurisdiction of the remanded case on its own motion. *See* 20 C.F.R. § 404.984(c)-(d). Ms. Gray now seeks review in this Court.

Born in August 1961, Ms. Gray was 46 years old on the alleged disability onset date and 54 at the time of the second administrative hearing. AR 92. She speaks English, and stated she attended school through the ninth grade, but did not obtain a GED. AR 35, 214. She alleges disability due to: degenerative disc disease of the lumbar spine, depression, tendonitis, and chronic obstructive pulmonary disease ("COPD"). AR 104.

## B.    The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 432(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§ 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20

C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 404.1520(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 404.1510. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R.

§ 404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.920(a)(4)(v), 404.1560(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ performed the sequential analysis. At step one, the ALJ found Ms. Gray met the insured status requirements for DIB through December 31, 2013, and had not engaged in substantial gainful activity since the alleged onset date, July 25, 2008. AR 541. At step two, the ALJ concluded that Ms. Gray had the following severe impairments: degenerative disc disease and degenerative joint disease of the lumbar spine; depression related to chronic pain; COPD; and "an alcohol use disorder in remission since 2012." *Id.* At step three, the ALJ determined that

Ms. Gray did not have an impairment or combination of impairments that met or equaled a listed impairment. AR 542.

The ALJ next assessed Ms. Gray's RFC and found that she could perform light work with the following caveats: she can lift 20 pounds occasionally and ten pounds frequently; sit, stand, and walk for six hours in an eight-hour day; occasionally push and pull with the right upper extremity; occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; must avoid even moderate exposure to hazards; can understand only simply instructions; can perform only simple, routine work tasks consistent with a General Educational Development ("GED") reasoning level of two and a Specific Vocational Preparation ("SVP") level of two. AR 544; *see Dictionary of Occupation Titles* ("DOT"), *available at* 1991 WL 645958 (4th ed. 1991).

At step four, the ALJ found that Ms. Gray could not perform her past relevant work of clothing sorter or home attendant. AR 549. At step five, the ALJ concluded that Ms. Gray could perform jobs that exist in significant numbers in the national economy, including electronics worker, laundry articles sorter, and router clerk. AR 549-50. Accordingly, the ALJ found Ms. Gray not disabled. AR 550-51.

## DISCUSSION

Ms. Gray contends the ALJ made the following legal errors in evaluating her case: (1) failing to properly consider and incorporate the medical opinions of several providers; (2) failing to provide legally sufficient reasons to discredit Ms. Gray's symptom testimony; and (3) failing to carry the burden of proof by identifying other work Ms. Gray is capable of performing; and, in the alternative; (4) that the ALJ erred by failing to order further consultative examinations.

## A.     Medical Opinion Evidence

The ALJ is responsible for resolving conflicts in the medical record, including conflicting physicians' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2007). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Additionally, the ALJ must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Lester*, 81 F.3d at 830. As is the case with a treating physician's opinion, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's ADLs. *Tommasetti*, 533 F.3d at 1040. It is error to ignore an examining physician's medical opinion without providing reasons for doing so; an ALJ effectively rejects an opinion when he ignores it. *Smolen*, 80 F.3d at 1286.

1.     *Dr. Anderson*

Ms. Gray argues that although the ALJ purported to accord "substantial weight" to state agency psychologist Dorothy Anderson, Ph.D., the ALJ failed to incorporate some of Dr. Anderson's assessed limitations into the RFC. Specifically, Dr. Anderson opined that Ms. Gray "is capable of brief structured routine interactions with the public but is limited to areas that do not demand frequent unstructured or persuasive public communications. [She] would benefit from work that does not require tasks that require [sic] interaction or close coordination with co-workers." AR 411. Ms. Gray notes that at the first administrative hearing, when the ALJ included in the hypothetical questions a limitation to only occasional interaction with the public and coworkers, the VE was unable to identify any light or sedentary jobs Ms. Gray would be able to perform. AR 82, 85-86. Accordingly, argues Ms. Gray, the social interaction limitation is material and should have been included in the second RFC formulated by the second ALJ and in hypotheticals at the hearing on remand.

The Commissioner concedes that Dr. Anderson's assessed limitations should have been included in the RFC, but that any error was harmless because the jobs the ALJ ultimately identified at step five require no "significant dealings" with people. Def.'s Br. at 5-6 (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (remand is not required to address inconsequential ALJ error)). Although the Commissioner identifies the DOT codes for the jobs of laundry sorter, electronics worker, and router clerk, no further information is provided in support of the Commissioner's argument, aside from the conclusory assertion that these jobs "accommodated" the social limitations set forth by Dr. Anderson. As Ms. Gray accurately points out, however, the VE at the initial hearing noted that there were no light or sedentary jobs available for claimants with limitations to simple tasks and only occasional interaction with

others.[1] AR 82, 85-86. The Commissioner's argument is undermined by the VE testimony at the initial hearing. Therefore, based on the record before the Court, omitting Dr. Anderson's assessed social interaction limitations was not inconsequential to the ultimate non-disability decision. Remand is appropriate.

    2.    *Dr. Perry*

Ms. Gray argues the ALJ erred in evaluating medical opinion testimony provided by DeWayde Perry, M.D., following consultative examinations in 2009 and 2011. In 2009, Dr. Perry opined that Ms. Gray could be expected to stand and walk for up to four hours of an eight-hour workday, while Dr. Perry doctor opined in 2011 that Ms. Gray could stand and walk for up to six hours. AR 352, 459. The ALJ accorded "substantial weight" to the 2011 assessment, but gave "less weight" to the 2009 assessment because it was "an underestimate of the claimant['s] overall level of functioning." AR 547. Aside from the different stand/walk limitation, however, Dr. Perry's assessments were essentially identical. *Compare* AR 349-53 *with* AR 455-60.

The Commissioner argues that the ALJ did not err; rather, the ALJ appropriately found that Dr. Perry's "detailed observations" were supported by the record as a whole, and moreover, as Dr. Perry stated in his 2011 opinion, his "findings were inconsistent with [Ms. Gray's] complaints of severe back pain." AR 459, 547. The Commissioner further argues that the ALJ identified specific evidence in support of his assessment, noting relatively unremarkable findings by Dr. Perry in both consultative exams, aside from complaints of severe pain. As Dr. Perry's reports bear out, however, the same clinical testing was done in both 2009 and 2011, with nearly

---

[1] At the second hearing, the VE was not asked a hypothetical question that included the social limitations at issue.

identical results. The only difference is that in 2009, Dr. Perry assessed a four-hour stand/walk limitation, while in 2011 he used the same information to assess a six-hour stand/walk limitation. Although the ALJ was within his authority to choose which of the stand/walk limitations was better supported, the ALJ was compelled to provide a specific and legitimate reason to reject one conclusion over the other. *Lester*, 81 F.3d at 830. Instead, the ALJ only gave the conclusory statement that the 2009 assessment was an "underestimate" of Ms. Gray's "overall level of functioning." AR 547. Because the ALJ did not provide a legally sufficient basis for rejecting the earlier report, the ALJ erred.

      3.    *Dr. Gabriele*

Mary E. Gabriele, M.D. treated Ms. Gray from 2009 through June 2015. AR 533. She provided two medical opinion letters in support of Ms. Gray's claim, one in April 2013, and another in May 2013. AR 486, 533. In the April letter, Dr. Gabriele explained that she treated Ms. Gray for chronic back pain with methodone and norco, that she was informed by Ms. Gray that a surgeon felt her back was not operable, that there was no recent medical imagining of Ms. Gray's back, and that her pain caused substantial functional limitation. AR 486. The following month, Dr. Gabriele wrote a second letter, explaining that an MRI of Ms. Gray's lumbar spine had been performed in the interim that revealed degenerative changes and supported allegations of ongoing pain and disability. AR 533. In both letters, Dr. Gabriele added that Ms. Gray likely has psychological or cognitive limitations as well, but the doctor did not have sufficient information to form an opinion on the issue. AR 486, 533. The ALJ accorded "little weight" to the doctor's opinions, stating that they were "poorly explained," and because they were "based on limited objective information," it suggested Dr. Gabriele's assessments were primarily based on subjective complaints. AR 548.

Ms. Gray's first assignment of error is that the ALJ failed to consider the appropriate regulatory factors for weighing treating physician opinions. Ms. Gray specifically argues that recent Ninth Circuit precedent established that an ALJ's failure to consider length of treating relationship, frequency of medical examinations, nature and extent of treatment relationship constitutes reversible error. *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (as amended) (citing 20 C.F.R. § 404.1527(c)(2)-(6)). Indeed, the ALJ did not explicitly recognize that Dr. Gabriele was Ms. Gray's treating physician, nor did he evaluate the nature, length, and extent of the doctor's treatment relationship.[2] AR 544. Thus, the ALJ erred. *Trevizo*, 871 F.3d at 676.

Moreover, the ALJ's assertion that Dr. Gabriele's opinion was not supported by the objective medical record is contradicted by the record. As the doctor's second letter explained, Ms. Gray's back pain complaints were substantiated by the MRI results, which demonstrated "severe and chronic changes to her lumbar spine," specifically, "mild concentric canal stenosis at the L4-L5 level secondary to a small broad-based central disc protrusion and posterior element hypertrophy with ligamentum flavum thickening and moderate lumbosacral face joint arthrosis." AR 533. Although the Commissioner argues MRI results demonstrate only mild changes inconsistent with disabling pain, it is error for an ALJ to rely on "the mildness" of spinal imaging in assessing functional limitation due to pain. *Trevizo*, 871 F.3d at 676-77.

4.      *Dr. Yeh*

Robert Hsiang-Sen Yeh, M.D., replaced Dr. Gabriele as Ms. Gray's treating physician, and he provided a medical opinion in April 2016, noting that Ms. Gray had been in his care "for a little while," had "disabling symptoms of intractable lower back pain due to lumbar arthritis," and had "very little tolerance for exertion." AR 858. The ALJ rejected the opinion, stating that

---

[2] The Commissioner's brief is non-responsive to Ms. Gray's assignment of error under *Trevizo*.

the opinion touched on the ultimate issue of disability which was reserved to the Commissioner, and was inconsistent with his own treatment notes and the record in general. AR 548.

A discrepancy between a treating source's medical opinion and the source's own treatment notes is a clear and convincing reason to reject that doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The Commissioner argues the ALJ accurately determined that Dr. Yeh's chart notes demonstrated Ms. Gray was not as limited as his 2016 opinion suggested, citing his report that Ms. Gray walked her dog daily without pain flares, "but still has trouble doing heavier work." AR 833. The Court disagrees. Dr. Yeh's statement that Ms. Gray has "trouble doing heavier work" is consistent with Dr. Yeh's opinion that Ms. Gray has "little tolerance for exertion." Further, minimal activities such as walking a dog once per day or occasionally shopping for groceries do not necessarily preclude a valid disability claim. *See, e.g.*, *Reddick v. Chater.* 157 F.3d 715, 722 (9th Cir. 1998) (claimants should not be penalized for attempting to lead normal lives in the face of their limitations).

The ALJ also noted that Dr. Yeh's opinion was accorded diminished weight because his "notes d[id] not show a significant change in the claimant's impairments or functional ability." AR 548. Ms. Gray, however, has not alleged a significant change in her condition since she began treating with Dr. Yeh. Rather, she asserts she has been disabled for the entirety of their treating relationship. As such, the ALJ's finding is unsupported by substantial evidence.

Finally, the ALJ concluded that Dr. Yeh's opinion is not consistent with the record as a whole or with the opinions of the state agency physicians. AR 548. This finding, however, fails to consider the fact that the state agency opinions were rendered four years before Dr. Yeh's opinions, without the benefit of the MRI of May 2013, which provided a basis for the opinions of

the treating physicians of record. *See* AR 140. Thus, none of the reasons provided by the ALJ for rejecting Dr. Yeh's opinion meet the specific-and-legitimate legal standard.

**B.    Symptom Testimony**

There is a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vazquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1029, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 503 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p.

*See* SSR 16-3p, *available at* 2017 WL 5180304 (republished Oct. 25, 2017). SSR 16-3p

eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an

examination of an individual's character," and requires the ALJ to consider all of the evidence in

an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *2; *see*

*also Trevizo*, 871 F.3d at 678 n.5. The Commissioner recommends that the ALJ examine "the

entire case record, including the objective medical evidence and individual's statements about

the intensity, persistence, and limiting effects of symptoms statements and other information

provided by medical sources and other persons; and any other relevant evidence in the

individual's case record." *Id.* at *7. The Commissioner recommends assessing: (1) the claimant's

statements made to the Commissioner, medical providers, and others regarding the claimant's

location, frequency and duration of symptoms, the impact of the symptoms on daily living

activities, and other methods used to alleviate symptoms; (2) medical source opinions,

statements, and medical reports regarding the claimant's history, treatment, responses to

treatment, prior work record, efforts to work, daily activities, and other information concerning

the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical

source statements, considering how consistent those statements are with the claimant's

statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

     The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons

for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may

not, however, make a negative credibility finding "solely because" the claimant's symptom

testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d

at 883.

At the hearings, Ms. Gray testified that back pain and fatigue require her to lie down to nap for 1½ to 2 hours each day, and that she has shooting pain down her left leg when standing or when seated. AR 42-44, 68-69, 574, 587. Ms. Gray stated that although she can cook, she is unable to wash her dishes because of the pulling and twisting motions involved. AR 53-54. In a function report Ms. Gray completed for her disability application, she stated she could walk only one block before she needed to rest for 20 minutes. AR 311.

Both ALJs found that Ms. Gray's statements concerning the intensity, persistence, and limiting effects of her pain symptoms were not entirely credible.[3] AR 24, 545. Indeed, the findings in the second ALJ decision regarding Ms. Gray's subjective symptoms appear to have been transposed in large part from the first ALJ decision. For example, the second ALJ transposed, word-for-word, a full paragraph regarding Ms. Gray's history of substance abuse, about which the ALJ found she had been "less than completely honest." *Compare* AR 18 *with* AR 547.

Before the promulgation of SSR 16-3p, ALJs regularly made overarching credibility findings regarding the reliability of a claimant's testimony. Generally, ALJs could support a negative credibility finding by identifying any testimony that was inconsistent with prior testimony or other evidence of record, and cast doubt upon *all* the statements of record attributed to the claimant. *See, e.g.*, *Smolen*, 80 F.3d at 1284 (ALJs may use "ordinary techniques of credibility evaluation, such as a claimant's reputation for lying . . . ."). Under SSR 16-3p,

---

[3] In the period between the first and second ALJ decisions in this case, the Social Security Administration promulgated SSR 16-3p. Accordingly, the second ALJ stated that Ms. Gray's allegations were "not entirely consistent with the medical evidence and other evidence in the record," rather than using the term "credibility." AR 545. Although the second ALJ did not cite SSR 16-3p in his decision, on review the Commissioner appears to concede the ruling is applicable. *See* Def.'s Br. at 12 (citing SSR 16-3p).

however, ALJs "must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments . . . [and] will not assess an individual's overall character or truthfulness in the manner typically used in an adversarial court litigation." SSR 16-3p, at *11. Although the second ALJ in this case was bound to apply SSR 16-3p in his September 15, 2016 decision, the ALJ's finding that Ms. Gray "was less than completely honest" about her history of substance use essentially functioned as an assessment of her character or truthfulness. AR 547. Thus, the finding constitutes legal error.

The second ALJ also ran afoul of SSR 16-3p by transposing other findings from the first ALJ decision. For example, the second ALJ found that Ms. Gray's allegations were undermined by her ability to take a cruise to Mexico in 2011, in a paragraph taken from the first ALJ decision. AR 18, 547. Although it may be appropriate for the two ALJs independently to reach a similar conclusion about the cruise, both ALJs misstated the year of the excursion. The record reflects that Ms. Gray took the cruise in 2010, rather than in 2011. This strongly suggests the second ALJ did not arrive at the finding entirely independently from the first ALJ's decision. AR 476. Regardless, the second ALJ failed to connect the purportedly inconsistent activity, walking around on a cruise ship, with any specific allegation. AR 547. Rather than "explain[ing] which of an individual's symptoms [the ALJ] found consistent or inconsistent with the evidence," the ALJ simply provided the general comment that Ms. Gray's allegations were not fully supported. AR 547; SSR 16-3p, at *8.

Similarly, the ALJ referred only generally to Ms. Gray's alleged limitations in finding that she "got a job babysitting a three-month old baby." AR 547. The ALJ did not identify any specific allegation that the activity necessarily belied, and further, the ALJ did not solicit or explain how often Ms. Gray performed the activity, or why babysitting a three-month old baby

requires a greater capacity than that endorsed by Ms. Gray. Recently, the Ninth Circuit determined that the ability to undertake childcare activities does not preclude a disability finding, particularly where there is very little information describing those activities. *Trevizo*, 871 F.3d at 682. The facts and the reasoning in *Trevizo* directly parallel the issue of Ms. Gray's babysitting. The ALJ's rationale is not legally sufficient. *Id.*

The ALJ also found that Ms. Gray's "alleged limitations" were inconsistent with her ability to perform self-care, prepare simple meals, go to the store, attend Alcoholics Anonymous, and volunteer to feed the homeless with members of her church. AR 547. The ALJ, however, did not connect the activities with specific symptoms, but merely provided a boilerplate statement that the "activities indicated a higher level of function than that alleged by claimant." *Id.* The rationale fails because it is contrary to the guidance set forth in SSR 16-3p, and moreover, it does not meet the longstanding clear-and-convincing standard for discrediting symptom testimony. *See, e.g.*, *Dodrill*, 12 F.3d at 918 (it is not sufficient for the ALJ to make only general findings). Moreover, the ability to perform minimal activities does not translate into the ability to perform full-time work, nor does a claimant need to be completely incapacitated in order to receive benefits. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

The Commissioner argues that the ALJ properly found that Ms. Gray's allegations were undermined by her course of conservative treatment. Although conservative treatment *can* be a valid reason to find a claimant's allegations of disabling symptoms unsupported, the ALJ must still provide a clear and convincing rationale in support. Here, the ALJ's finding was merely that "treatment has been generally conservative. [Ms. Gray] has not generally received the type of orthopedic or other specialty medical treatment that one would expect for a totally disabled

individual." AR 547. As such, the generalized finding does not meet the clear and convincing standard. *Dodrill*, 12 F.3d at 918. Further, assuming *arguendo* the ALJ had successfully linked the conservative treatment rationale to one of Ms. Gray's allegations, "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment [s]he cannot obtain for lack of funds." *Trevizo*, 871 F.3d at 681 (quoting *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995)). The Commissioner does not contest Ms. Gray's assertion that she had limited financial resources and did not have health insurance for the entire time she was treated by Dr. Gabriele. *See* AR 486. Although Ms. Gray eventually acquired health insurance by June 2013, her uncontested testimony to the first ALJ was that she was told that her insurance would not cover a surgical consult. AR 48-49. Thus, the ALJ's suggestion that Ms. Gray's allegations were unsupported because she did not seek specialty medical treatment is not a valid rationale.

The ALJ also found that Ms. Gray's pain was controlled with narcotic medication. AR 545. Impairments that can be controlled effectively with treatment are not disabling. *See* *Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). In support, the ALJ noted that Ms. Gray was having good results with her pain medications in October 2010 and April 2011. AR 545. Although improvement was reported, at the subsequent treatment visit in July 2011, Ms. Gray explained that she was still experiencing enough back pain that it was difficult for her to stand to do the dishes. AR 481. Ms. Gray's report to her provider in 2011 is consistent with her testimony at her hearings, and testimony from her medical providers and third parties of record. *See* Pl.'s Reply at 6-7; AR 18, 314, 319, 387, 424, 438 449-50, 481, 491, 498, 548, 796-97, 843, 849. Accordingly, it was error for the ALJ to ascribe reported improvement with pain medications as evidence that Ms. Gray's pain testimony was inconsistent with the record as a whole.

The ALJ also determined that Ms. Gray's pain allegations were not supported because, despite alleging longstanding pain, Ms. Gray had been able to maintain employment as a clothes sorter at the Goodwill. AR 545. The ALJ's rationale, however, is inconsistent with his own findings, which established that based on her RFC, she could not return to her prior work due to her impairments. AR 549, 591. Thus, the ALJ's conclusion is invalid.

The ALJ also held that limitations arising from Ms. Gray's mental impairments were not supported by the record, but the ALJ's reasoning also fails to meet the legal threshold. Specifically, the ALJ found that "claimant was not referred to mental health counseling and was not prescribed antidepressant medications." AR 546. The ALJ's finding is erroneous. Ms. Gray was prescribed a variety of antidepressants in the period between the first and second ALJ decisions. AR 788, 798, 829, 841-42, 851, 855. Furthermore, in response to questioning by the ALJ, Ms. Gray explained that her depression seemed to be associated with her back pain. AR 60. Ms. Gray's explanation is consistent with Dr. Beickel's observation that Ms. Gray's concentration "is related to the amount of pain and depression she is experiencing," as well as the ALJ's own express finding that "depression related to chronic pain" is a severe impairment. AR 361, 541. Additionally, Ms. Gray presumably would have had difficulty paying for therapy even if she had decided to pursue it, because as noted above, she was uninsured for much of the relevant time period. For all of these reasons, the ALJ's assessment of Ms. Gray's subjective symptom testimony was failed to meet the clear and convincing standard, and remand is therefore appropriate.

## C.     Step Five

At step five of the sequential evaluation process, the burden of proof rests with the Commissioner to establish whether other work exists in the national economy that a worker of

claimant's age, education, work experience, and RFC is able to perform. *See* 20 C.F.R.

§§ 404.1569, 416.969; *Tackett*, 180 F.3d at 1099. In posing hypothetical questions to the VE to

determine if other work exists, the ALJ must include all of the claimant's functional limitations

which are supported by substantial evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th

Cir. 2001). The Commissioner must further establish that the claimant can make an adjustment to

work that "exists in significant numbers . . . in the country . . . ." 20 C.F.R. §§ 404.1566(a),

416.966(a). Here, the ALJ identified three jobs in his decision: electronics worker, laundry

articles sorter, and router clerk. AR 550.

None of the jobs identified by the ALJ, however, were discussed by the VE at the

hearing. *See* AR 591-92 (VE identifying bakery worker, laminating machine off-bearer, and

school bus monitor). Accordingly, Ms. Gray asserts the Commissioner failed to carry the burden

of proof because there was "no evidence" to support the ALJ's step five finding. In response, the

Commissioner contends any error was harmless because the jobs identified by the ALJ comport

with Ms. Gray's RFC requirements.

The ALJ's RFC formulation was not supported by substantial evidence because of the

legal errors he made in assessing the medical opinion evidence and Ms. Gray's symptom

testimony. Consequently, the ALJ's findings at step four and step five also were not based on

substantial evidence. Therefore, the Court does not reach the issue of whether the ALJ erred by

basing his step five findings on jobs that were not identified by the VE.

**D.      Remand for Further Proceedings**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to

remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation

omitted). Although a court should generally remand to the agency for additional investigation or

explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d 995, 999 (9th Cir. 2014). The Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved. In conducting this review, the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.

> If the district court does determine that the record has been fully developed and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits. A district court is generally not required to exercise such discretion,

however. District courts retain flexibility in determining the
appropriate remedy and a reviewing court is not required to credit
claimant's allegations regarding the extent of their impairments as
true merely because the ALJ made a legal error in discrediting
their testimony.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation

marks omitted).

Here, the ALJ committed reversible errors in assessing the medical opinions of

Drs. Anderson, Perry, Gabriele, and Yeh; and failed to provide legally sufficient rationales for

rejecting the symptom testimony provided by Ms. Gray. Thus, the first prong of the *Garrison*

credit-as-true test is met.

In support of the position that the record is not fully developed, the Commissioner argues

that further proceedings would allow an ALJ "to resolve conflicts between Ms. Gray's testimony

and the opinions of the State agency consulting physicians, each of whose opinions were

consistent with sustained competitive employment[,]" although the Commissioner does not

identify any specific conflicts. Furthermore, the Commissioner's argument does not reflect the

record. For example, the ALJ erred by failing to incorporate into the RFC the entirety of the

assessment of reviewing physician Dr. Anderson, who opined that Ms. Gray would have social

interaction limitations in the workplace. Moreover, the Commissioner conceded that the

omission of Dr. Anderson's assessed social limitation was erroneous, although the

Commissioner argued the error was harmless. As demonstrated in the first ALJ hearing, the

addition of such a limitation to Ms. Gray's RFC would preclude all light and sedentary work. *See*

AR 82-85. Accordingly, the Commissioner's argument fails.

The Court, therefore, next considers whether an ALJ, on remand, would be required to

find Ms. Gray disabled if the erroneously discredited evidence were credited as true. As noted,

the VE testimony of record establishes Ms. Gray would be disabled if Dr. Anderson's limitations

were credited. *Id.* The conclusion is further supported by the opinion of longtime treating physician Dr. Gabriele, who indicated Ms. Gray's pain allegations were supported by objective evidence, namely, the 2013 MRI, and that Ms. Gray had additional "social obstacles" that were likely to hinder her effectiveness in the workplace. AR 533. Ms. Gabriele's opinion is consistent with the erroneously discredited opinion of Dr. Yeh, who noted that Ms. Gray has "multiple medical and mental health issues," including "disabling" pain symptoms and little tolerance for exertion, as well as "anxious depression and memory loss." AR 858. Those opinions are consistent with the opinion of consultative psychologist Sharon L. Beickel, Ph.D., who opined that Ms. Gray was not able to remember instructions, and could only be expected to sustain concentration for short periods of time based on the amount of pain and depression she was experiencing. AR 361. ALJ accorded "significant weight" to Dr. Beickel's opinion despite finding it was "vague and subject to multiple interpretations," and further indicated it was consistent with the opinions of the reviewing physicians, including Dr. Anderson. AR 548.

Because Dr. Perry provided two contradictory opinions regarding the number of hours Ms. Gray could be expected to stand and walk, it is not possible to establish an unequivocal conclusion about his findings by crediting them as true. *Compare* AR 352 (four-hour stand/walk limitation) *with* AR 459 (six-hour stand/walk limitation). This ambiguity, however, does not require further proceedings because fully crediting the opinions of Drs. Anderson, Beickel, Gabriele, and Yeh would direct a finding of "disabled," even if Dr. Perry's less limiting six-hour stand/walk limitation were credited as true. Finally, both VEs opined that Ms. Gray would not be able to sustain gainful employment if she needed to lie down every day for 1½ to 2 hours. AR 68-69, 597-98. Thus, if her allegations were credited as true, Ms. Gray would be found disabled under the Act.

This record leaves little doubt that Ms. Gray is disabled. This case marks the Commissioner's second opportunity to demonstrate to the District Court that Ms. Gray is not disabled. After a remand hearing, the second ALJ issued a decision that repeated several of the first ALJ's errors of fact and law, failed to follow a binding SSR, and provided only a perfunctory analysis of the opinions of Ms. Gray's treating physicians. Further, the second decision's RFC formulation failed to include all of Ms. Gray's accepted limitations, and despite purporting to rely on VE testimony, the second ALJ appeared to completely disregard the VE's testimony regarding "other work" and instead derived his own findings. *Compare* AR *with* AR 550.[4]

Setting aside the legal errors in both the decisions in this case, Ms. Gray was twice found to be limited to less than a full range of light work. Ms. Gray is now 56 years old, and her disability applications have been in process for nearly seven years. If, on remand, a new RFC were formulated that limited Ms. Gray to sedentary work, the Medical-Vocational Guidelines would direct a finding of disabled, based on the second VE's assertion that she has no transferable job skills. *See* AR 593; 20 C.F.R. Part 404, Subpart P, Appendix 2; SSR 83-10, 1983 WL 31251, at *6. These facts strongly militate against remanding this matter for further proceedings, as the Commissioner has had ample opportunity to establish non-disability, and additional proceedings would cause additional delay and a waste of resources. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.'") (citation omitted); *see also Garrison*, 759 F.3d at 1021-22.

---

[4] The Court additionally notes that despite finding Ms. Gray could not return to her prior work as a "clothing sorter" at step four, the second ALJ, in an apparent contradiction, nevertheless determined at step five that Ms. Gray could perform the work of "laundry article sorter." *See* AR 549-50.

As the first ALJ noted, *res judicata* applies to this case because of a final denial made on a prior application for benefits on October 15, 2010. AR 11-12. Accordingly, the Court remands this case for immediate calculation and payment of benefits for the period beginning October 16, 2010.

## CONCLUSION

Because Ms. Gray has identified harmful error in the ALJ's assessment of the medical opinions of record and her symptom allegations, which resulted in an erroneous RFC formulation and subsequent error at step five, the Commissioner's decision is not based on proper legal standards or supported by substantial evidence. Therefore, Ms. Gray's request for remand (ECF 1) is GRANTED. The Commissioner's decision is REVERSED, and this case is REMANDED for immediate calculation and payment of benefits beginning on October 16, 2010.

DATED this 9th day of February, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge